*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JAMES WILLIAM PELC and ANNA MARIE PELC,

Plaintiffs-Appellants,

v

NORTH STAR RANCH, INC. and RICHARD ALLAN VANDERMOLEN,

Defendants-Appellees.

UNPUBLISHED
February 21, 2019

No. 339635
Wayne Circuit Court
LC No. 15-015352-NI

Before: CAVANAGH, P.J., and BORRELLO and REDFORD, JJ.

PER CURIAM.

Plaintiffs, James and Anna Pelc, appeal as of right the trial court's order granting defendants' motion for summary disposition and dismissing their auto negligence case with prejudice on the ground that plaintiffs failed and could not establish that James suffered an objectively manifested impairment as required under MCL 500.3135(5). We reverse.

## I. BACKGROUND

While driving a semi tractor trailer belonging to his employer, defendant, North Star Ranch, Inc., defendant, Richard Vandermolen, rear-ended James on I-96 on April 25, 2015. Plaintiffs sued defendants alleging that James suffered serious injuries to his cervical spine, back, and head attributable to the accident. Defendants denied liability and after discovery moved for summary disposition on the ground that James's injuries failed to meet Michigan's no-fault insurance act's, MCL 500.3101 *et seq.*, threshold injury requirement and specifically argued that plaintiffs could not prove that James suffered an objectively manifested impairment as required under MCL 500.3135(5). Defendants argued to the trial court that James suffered from preexisting conditions for which he received treatment for the same ailments he contended were caused by the accident. Defendants also contended that James falsely reported to his treating physician after the accident that he was asymptomatic before it occurred. The trial court ruled in favor of defendants and this appeal followed.

Plaintiffs first argue that the trial court erred by concluding that plaintiffs, as a matter of law, could not establish that James suffered an objectively manifested impairment as required under MCL 500.3135(5). Plaintiffs assert that the proofs presented to the trial court met the standard to establish that James suffered an objectively manifested impairment as a result of the April 2015 accident. We agree.

## II. STANDARD OF REVIEW

We review de novo a trial court's decision on a summary disposition motion and consider the entire record to determine whether defendant established entitlement to summary disposition. *Patrick v Turkelson*, 322 Mich App 595, 605; 913 NW2d 369 (2018). In *Patrick*, this Court stated the applicable standard of review:

> A motion for summary disposition brought pursuant to MCR 2.116(C)(10) tests the factual support for a claim. Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. A motion pursuant to MCR 2.116(C)(10) is reviewed by considering the pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party. A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ. It is well settled that the circuit court may not weigh the evidence or make determinations of credibility when deciding a motion for summary disposition. Moreover, a court may not make findings of fact; if the evidence before it is conflicting, summary disposition is improper. [*Id.* at 605-606 (quotation marks and citations omitted).]

## III. ANALYSIS

This case requires us to determine whether plaintiffs established that James suffered an objectively manifested impairment or at least the existence of a genuine issue of fact in that regard. MCL 500.3135 provides in relevant part as follows:

> (1) A person remains subject to tort liability for noneconomic loss caused by his or her ownership, maintenance, or use of a motor vehicle only if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement.
>
> (2) For a cause of action for damages pursuant to subsection (1) filed on or after July 26, 1996, all of the following apply:
>
> (a) The issues of whether the injured person has suffered serious impairment of body function or permanent serious disfigurement are questions of law for the court if the court finds either of the following:
>
> (*i*) There is no factual dispute concerning the nature and extent of the person's injuries.

(*ii*) There is a factual dispute concerning the nature and extent of the person's injuries, but the dispute is not material to the determination whether the person has suffered a serious impairment of body function or permanent serious disfigurement. However, for a closed-head injury, a question of fact for the jury is created if a licensed allopathic or osteopathic physician who regularly diagnoses or treats closed-head injuries testifies under oath that there may be a serious neurological injury.

\* \* \*

(5) As used in this section, "serious impairment of body function" means an objectively manifested impairment of an important body function that affects the person's general ability to lead his or her normal life.

In *McCormick v Carrier*, 487 Mich 180, 193; 795 NW2d 517 (2010) (quotation marks and citations omitted), our Supreme Court explained that the plain language of MCL 500.3135 required trial courts to determine as a matter of law the question whether the plaintiff suffered a serious impairment of body function "as long as there is no factual dispute regarding the nature and extent of the person's injuries that is material to determining whether the threshold standards are met." The Court instructed that, if "there is a material factual dispute regarding the nature and extent of the person's injuries, the court should not decide this issue as a matter of law." *Id*. at 194. The Court explained further regarding MCL 500.3135[1] that:

On its face, the statutory language provides three prongs that are necessary to establish a "serious impairment of body function": (1) an objectively manifested impairment (2) of an important body function that (3) affects the person's general ability to lead his or her normal life. [*Id*. at 195.]

\* \* \*

Under the first prong, it must be established that the injured person has suffered an objectively manifested impairment of body function. The common meaning of "an objectively manifested impairment" is apparent from the unambiguous statutory language, with aid from a dictionary, and is consistent with the judicial interpretation of "objectively manifested" in *Cassidy* and *DiFranco*. [*Id*. at 195-196.]

\* \* \*

[T]he common meaning of "objectively manifested" in MCL 500.3135[5] is an impairment that is evidenced by actual symptoms or conditions that someone

---

[1] When our Supreme Court decided *McCormick*, the definition of "serious impairment of body function" appeared in MCL 500.3135(7) which the Legislature redesigned pursuant to 2012 PA 158 as MCL 500.3135(5).

other than the injured person would observe or perceive as impairing a body function. In other words, an "objectively manifested" impairment is commonly understood as one observable or perceivable from actual symptoms or conditions. [*Id.* at 196.]

Notably, MCL 500.3135[5] does not contain the word "injury," and, under the plain language of the statute, the proper inquiry is whether the impairment is objectively manifested, not the injury or its symptoms. This distinction is important because "injury" and "impairment" have different meanings. An "injury" is "1. Damage of or to a person . . . 2. A wound or other specific damage." *The American Heritage Dictionary, Second College Edition* (1982). "Impairment" is the "state of being impaired," *Webster's Third New International Dictionary* (1966), and to be "impaired" means being "weakened, diminished, or damaged" or "functioning poorly or inadequately." *Random House Webster's Unabridged Dictionary* (1998). These definitions show that while an injury is the actual damage or wound, an impairment generally relates to the effect of that damage. Accordingly, when considering an "impairment," the focus "is not on the injuries themselves, but how the injuries affected a particular body function." *DiFranco*, 427 Mich at 67, 398 NW2d 896. [*Id.* at 197.]

Further, in *Fisher v Blankenship*, 286 Mich App 54, 64; 777 NW2d 469 (2009), this Court instructed that "the aggravation or triggering of a preexisting condition can constitute a compensable injury." Therefore, preexisting conditions and a history of treatment of such conditions does not require granting summary disposition and dismissal of a lawsuit brought by a plaintiff following a motor vehicle accident.

In this case, defendants moved for a ruling that plaintiffs failed and could not establish that James suffered "an objectively manifested impairment" as a matter of law because he had preexisting conditions for which he received treatment before the April 2015 accident. Defendants relied on selective evidence from James's medical records and offered their generalized interpretation to show that James had preexisting conditions respecting his neck, back, shoulder and arm. They argued that James falsely claimed after the April 2015 accident that he was asymptomatic before the accident. Plaintiffs countered with James's medical records and his post-accident surgeon's testimony. Plaintiffs argued that a complete analysis of James's medical records established that James suffered "an objectively manifested impairment" as a result of the April 2015 accident and that he never made false statements regarding his pre-accident condition.

De novo review of the entire record indicates that a genuine issue of material fact exists regarding whether James suffered an objectively manifested impairment as a result of the April 2015 accident. Significantly, James's family physician's pre-accident treatment records, particularly the March 20, 2015 office visit notes, reported that James presented without back, neck, shoulder, arm, or head pain complaints. The portion of the document defendants referenced reported past complaints, not the reason for James's March 20, 2015 office visit. The doctor's pre-accident medical records indicated that James's office visit pertained to benign essential hypertension, not for the same or similar conditions he complained about after the April 2015 accident.

The record reflects that James also made an office visit to see his doctor on February 18, 2015. That visit concerned left eye drainage. The doctor's pre-accident records for February 2015 and March 2015, the last two months before the April 2015 accident, reflect that James did not complain of eye pain, blurry vision, ear pain, hearing loss, numbness, weakness, tingling, headache, or dizziness. Although the records reflected that James had previously complained of chronic pain, his doctor's February and March 2015 records made no mention of neck or back pain, or any of the conditions about which he complained after the accident.

We conclude that James's family doctor's two pre-accident records established James's baseline condition for the two months before the April 2015 accident. Those records indicate that James was asymptomatic regarding the post-accident conditions about which he complained after the accident. We do not find on the record before us evidence that undermines the conclusion that James, in fact, was asymptomatic before the accident. The record does not reflect that James falsely informed his surgeon after the accident regarding his pre-accident condition. After the April 2015 accident, James experienced severe persistent pain in his neck, shoulders, and arms, as well as other conditions. These conditions were not present during February and March 2015.

The record reflects that James presented to his surgeon after the April 2015 accident with actual symptoms and conditions that the surgeon could observe and perceive as impairing James's neck and other body functions. The record reflects that the surgeon considered James's accident event, his post-accident symptoms, ordered tests, reviewed the MRIs, and observed in the MRI taken of James's neck that a herniated disc at the C3-4 level existed. The surgeon reasoned that the disc herniation caused an impingement of a nerve root. That objectively manifested impairment explained the symptoms about which James complained regarding his persistent and severe neck and arm pain after the accident. The MRI of James's lumbar spine showed herniated discs that were not previously observed or diagnosed. The record reflects that James's surgeon opined, based on all the evidence before him, that the April 2015 accident caused new objectively verifiable physical conditions or worsened James's preexisting conditions. Reviewing the evidence of record in the light most favorable to the nonmoving party, plaintiffs have produced evidence, which if believed by the finder of fact, could establish James's baseline condition just before the April 2015 accident.

Applying the analysis set forth in *McCormick*, we hold that plaintiffs established through admissible evidence the existence of a genuine issue of material fact whether James suffered objectively manifested impairments as required under MCL 500.3135(5). Accordingly, the trial court erred by granting defendants' summary disposition.

Plaintiffs also argue that the trial court erred to the extent it granted defendants' summary disposition on the ground that plaintiffs could not prove the causation element of their negligence claim. We find that the evidence presented to the trial court established the existence of a genuine issue of material fact in that regard.

In *Patrick*, 322 Mich App at 616-618, this Court summarized the legal principles for determination of causation as follows:

> Proximate causation is a required element of a negligence claim. Causation is an issue that is typically reserved for the trier of fact unless there is no dispute of material fact.
>
> To establish proximate cause, the plaintiff must prove the existence of both cause in fact and legal cause. While the term "proximate cause" is also a term of art for the concept of legal causation, Michigan courts have historically used the term proximate cause both as a broader term referring to factual causation and legal causation together and as a narrower term referring only to legal causation. . . . [A] court must find that the defendant's negligence was a cause in fact of the plaintiff's injuries before it can hold that the defendant's negligence was the proximate or legal cause of those injuries.
>
> * * *
>
> Establishing cause in fact requires the plaintiff to present substantial evidence from which a jury may conclude that more likely than not, but for the defendant's conduct, the plaintiff's injuries would not have occurred. Although causation cannot be established by mere speculation, a plaintiff's evidence of causation is sufficient at the summary disposition stage to create a question of fact for the jury if it establishes a logical sequence of cause and effect, notwithstanding the existence of other plausible theories, although other plausible theories may also have evidentiary support[.]
>
> To establish legal cause, the plaintiff must show that it was foreseeable that the defendant's conduct may create a risk of harm to the victim, and that the result of that conduct and intervening causes were foreseeable. Our inquiry normally involves examining the foreseeability of consequences, and whether a defendant should be held legally responsible for such consequences. . . . When judging the foreseeability of a risk of harm, it is not necessary that the manner in which a person might suffer injury should be foreseen or anticipated in specific detail. In other words, where an act is negligent, to render it the proximate cause, it is not necessary that the one committing it might have foreseen the particular consequence or injury, or the particular manner in which it occurred, if by the exercise of reasonable care it might have been anticipated that some injury might occur. [Quotation marks and citations omitted.]

In this case, the record reflects that plaintiffs submitted substantial evidence in response to defendants' motion from which a jury may conclude that, more likely than not, but for defendants' conduct, plaintiff's injuries would not have occurred. The parties do not dispute that the April 2015 accident happened or the severity of it. The record reflects that plaintiffs submitted evidence establishing a logical sequence of cause and effect showing that the rear-end crash inflicted injuries on James's cervical spine, lumbar spine, and head. James's medical records and his surgeon's testimony supported their contention that, but for the rear-end accident,

more likely than not, James would not have experienced the severity of his symptoms. The surgeon testified that James's injuries were consistent with the type of injuries suffered by persons who had rear-end motor vehicle accidents, and based on James's medical history, the accident event, and James's post-accident problems, he concluded that the April 2015 accident caused new injuries or exacerbated any preexisting conditions. We conclude that the evidence plaintiffs presented established a genuine issue of fact whether defendants' conduct served as the cause in fact of James's injuries.

Further, the record reflects that plaintiffs presented evidence that established a genuine issue of material fact whether defendants' conduct served as a proximate cause of James's injuries. Plaintiffs presented evidence regarding the foreseeability of the consequences of defendants' conduct that required the exercise of reasonable care. The evidence in the record does not establish, as a matter of law, that plaintiffs cannot prove causation. We hold that plaintiffs established through admissible evidence the existence of a genuine issue of material fact regarding causation. Accordingly, the trial court erred by granting defendants summary disposition.

Reversed and remanded. We do not retain jurisdiction.

/s/ Mark J. Cavanagh
/s/ Stephen L. Borrello
/s/ James Robert Redford